**Anthony FALCONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0314–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 29, 1984.

Bob Heath, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, W.E. "Rusty" Herman, Clayton Rawlings, Harris County Asst. Dist. Attys., Houston, for appellee.

Before WARREN, LEVY and COHEN, JJ.

## OPINION

COHEN, Justice.

The appellant pleaded not guilty to a three paragraph indictment alleging: 1)

theft of three thousand mechanical prints of the value of over $20,000.00, in violation of Tex.Penal Code Ann. sec. 31.03 (a), (b)(1) as amended in 1981;[1] 2) theft of three thousand mechanical prints by appropriating the property knowing it was stolen by another, in violation of sec. 31.03(a), (b)(2); and 3) theft of trade secrets, in violation of sec. 31.05(b)(1). The court granted the appellant's motion for instructed verdict as to the second paragraph, theft by receiving, and the State abandoned the third paragraph, theft of trade secrets. The jury convicted the appellant of felony theft of three thousand mechanical prints of over $20,000 value, as alleged in the indictment's first paragraph, and the judge assessed punishment at six years confinement, probated, and a $2,000.00 fine.

The appellant's sole contention on appeal is that the evidence was insufficient. The record shows that the appellant was employed by All Seals Corporation, which was in the business of repairing seals for high pressure pumps used in refineries, chemical plants, and manufacturing facilities. These seals consisted of several parts which could be disassembled for repair. Thousands of different parts in various sizes and shapes must be duplicated by a company in the business of repairing seals. For every part there is a mechanical print or drawing showing the general configuration, the materials used, and the exact dimensions of the part to be duplicated. At All Seals these mechanical prints or drawings were filed for future use in the event that an identical seal needed repair.

The appellant worked in the machine shop and in outside sales at All Seals for several years before going into business for himself. He was terminated in the fall of 1978 when the principal owner and then president of All Seals, Morris Womack, discovered that the appellant had already begun his own business of repairing seals and was, in fact, competing with All Seals for customers.

In the first quarter of 1979, Womack learned that the number of photocopies made on the company Xerox machine had increased by several thousand around the time the appellant left All Seals' employment. Four years later, officers of the Special Theft Division of the Houston Police Department received information from a confidential informant which allowed them to obtain a search warrant for the offices of the appellant, then doing business as Dyna Tech. Three thousand copies of All Seals manufacturing prints were found in the two work areas of Dyna Tech's main building. The appellant was arrested at the same time for the offense of theft of trade secrets.

At trial, the appellant presented evidence that the manufacturing prints were not stolen, but had been collected by a former president of All Seals, James Eaton, during his tenure in 1981 and 1982. Eaton testified that he had taken the prints home and sorted them in an effort to control the inventory of pump seals at All Seals. This action was taken with the knowledge and consent of Morris Womack. Womack later fired Eaton, and the prints lay around Eaton's house for several months until Christmas of 1982, when he took them to the appellant hoping that the appellant could benefit from them.

The appellant argues that there was no evidence that he unlawfully appropriated three thousand mechanical prints. He contends that Eaton's unrebutted testimony explained how the copies of the prints came to be on Dyna Tech's premises. However, even if the jury believed Eaton's testimony, the appellant could have also believed the testimony of his ex-wife, Dorothy Farbert. Farbert stated that she had seen copies of All Seals' prints in their home as early as July, 1978, when the appellant started his business, and as recently as April, 1983. Consequently, even if the appellant received some copies of prints from Eaton in

---

**1.** Texas Penal Code, sec. 31.03(a), (b)(1), ch. 298, sec. 2, 1981 Tex.Gen.Laws 849, *amended by* ch. 497, sec. 3, 1983 Tex.Gen.Laws 2918.

1982, there was evidence that he had copied other prints while employed by All Seals.

The appellant also argues that there was no probative evidence establishing the value of the prints at more than $20,000. However, Womack testified that the prints, if sold in one package, were worth $500,-000, and that they had a replacement value of between $200,000 and $300,000. Value was thus proved in accordance with Tex.Penal Code Ann. sec. 31.08 (Vernon 1974).

■ The appellant further suggests that there was insufficient evidence to prove that he intended to deprive Womack of the prints. The intent to deprive the owner of property must be proved in order to sustain a theft conviction, and failure to prove it requires reversal. *See Bryant v. State,* 627 S.W.2d 180 (Tex.Crim.App.1982).

The term "deprive" is defined under Tex. Pen.Code Ann. sec. 31.01(3) (Vernon 1974), as:

A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value of enjoyment of the property is lost to the owner;

B) to restore property only upon payment of reward or other compensation; or

C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.

■ There is no proof that the appellant intended to withhold the prints from Womack permanently or for any period of time, nor was there evidence that he intended to hold the prints for ransom, or to dispose of the prints in a way that made their recovery by Womack unlikely. No prints ever left Womack's possession. On the contrary, Womack testified that the prints possessed by the appellant were not his original drawings, but were merely copies, and that he still had every original drawing in his master file at All Seals. Nothing in the record shows an intent to deprive Womack of his prints. And, while the value of the prints was proved, there was no evidence that Womack was deprived of any part of

that value or that the appellant intended to deprive him of that value. Therefore, we conclude that the evidence was insufficient to prove a theft under Penal Code sec. 31.03(a), (b)(1), the only crime of which the appellant was convicted.

What the appellant did in this case may have constituted an offense under the theft of trade secrets statute, Penal Code secs. 31.05(b)(2) and 31.05(b)(3). The appellant was not charged with either of these offenses, however. Although he was charged with theft of trade secrets under sec. 31.05(b)(1), the State abandoned that paragraph of the indictment.

■ We further conclude that this case presents fundamental error. The appellant was improperly convicted under the general theft statute, Penal Code sec. 31.03(a), (b)(1), when he should have been charged under Penal Code sec. 31.05(b) (Vernon 1974), a special theft statute entitled *Theft of Trade Secrets.*

The general theft statute, sec. 31.03, reads, in pertinent part:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent; ...

The theft of trade secrets statute reads, in pertinent part:

31.05. Theft of Trade Secrets.

(a) For purposes of this section:

(1) "Article" means any object, material, device, or substance or any copy thereof, including a writing, recording, drawing, sample, specimen, prototype, model, photograph, microorganism, blueprint, or map.

(2) "Copy" means a facsimile, replica, photograph, or other reproduction of an article or a note, drawing, or sketch made of or from an article.

(3) "Representing" means describing, depicting, containing, constituting, reflecting, or recording.

(4) "Trade secret" means the whole or any part of any scientific or technical information, design, process, procedure, formula, or improvement that has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes.

(b) A person commits an offense if, without the owner's effective consent, he knowingly:

(1) steals a trade secret;

(2) makes a copy of an article representing a trade secret; or

(3) communicates or transmits a trade secret.

(c) An offense under this section is a felony of the third degree.

The Court of Criminal Appeals has held in *Ex parte Harrell*, 542 S.W.2d 169 (Tex. Crim.App.1976) that if a defendant's conduct is proscribed under a general statute and a specific statute, and both statutes have the same general purpose, the defendant should be charged under the specific statute. *See also Williams v. State*, 641 S.W.2d 236 (Tex.Crim.App.1982); *Tawfik v. State*, 643 S.W.2d 127 (Tex.Crim.App.1982); and *Jones v. State*, 552 S.W.2d 836 (Tex. Crim.App.1977). The holding in *Ex parte Harrell* and similar cases is based on the rule of statutory construction codified in Tex.Rev.Civ.Stat.Ann. art. 5429b–2, sec. 3.06 (Vernon Supp.1984), the Code Construction Act, which provides:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision unless the general provision is the later enactment and manifest intent is that the general provision prevail.

Tex.Penal Code, sec. 1.05(b) (Vernon 1974) provides:

Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01–3.12 of the Code Construction Act ... apply to the construction of this code.

Penal Code sec. 31.03 is a broad and general theft statute applicable to all types of unlawful appropriation of property. Section 31.05 is more specific than the general theft statute in at least three ways: (1) the victims are restricted to the owners of trade secrets; (2) the property is limited to trade secrets, as defined; and (3) the manner of commission of the offense includes not only stealing a trade secret but also copying an article representing a trade secret or communicating or transmitting the trade secret. Furthermore, sec. 31.05 anticipates the kind of proof problem presented in this case by eliminating the element of intent to deprive.

The practice commentary of sec. 31.05 acknowledges the specificity of the statute. It notes:

In addition to the thefts proscribed in subsection (b)(1), this section criminalizes unauthorized reproductions and communications of trade secrets, Subsections (b)(2) and (3). *Both are methods of stealing covered under subsection (1) if there is intent to deprive, but Subdivisions (2) and (3) cover that conduct whether or not it is theft.* (emphasis supplied)

Since there were significant conflicts between the general theft statute and the specific theft of trade secrets statute, both as to elements of proof and as to penalty range, the appellant should have been charged with the more specific offense, theft of trade secrets.

The sole ground of error is sustained.

The judgment of conviction is reversed and a judgment of acquittal is hereby entered. *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).